31 C.C.P.A. (Patents)

### NEIRING, Inc., v. SCHOONOVER.
#### Patent Appeal No. 4865.

Court of Customs and Patent Appeals.

April 27, 1944.

A. W. Murray, of Chicago, Ill., for appellant.

Fulton Brylawski and Herbert J. Jacobi, both of Washington, D. C., for appellee.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

GARRETT, Presiding Judge.

This is an appeal from the decision of the Commissioner of Patents (speaking through an assistant commissioner), see 55 U.S.P.Q. 355, affirming the decision of the Examiner of Trade-Mark Interferences sustaining the petition of appellee for the cancellation of trade-mark registration No. 376,089, issued to appellant March 12, 1940, under the Trade-Mark Registration Act of 1905, 15 U.S.C.A. § 81 et seq., upon an application (serial No. 424,014) filed September 28, 1939.

The mark consists of the notation "Gloria Jean Juniors," and the registration certificate recited that it was for use on women's, misses', and children's dresses, coats, skirts, blouses, and ski suits. The

word "Juniors" was disclaimed "apart from the mark as shown in the drawing."

It is conceded that "Gloria Jean" is the "given" or Christian name of a young girl (surname Schoonover) who became a juvenile "movie" picture actress employed by Universal Pictures Company, Inc., a concern engaged in the manufacture, sale and distribution of motion pictures, in which business it employs numerous actors and actresses, young and old.

As hereinafter will more distinctly appear, the determination of the controversy turns upon the so-called name clause of section 5 of the Trade-Mark Registration Act, the particular language involved reading:

"*Provided,* That no mark which consists merely in the name of an individual, firm, corporation, or association not written, printed, impressed, or woven in some particular or distinctive manner * * * shall be registered under the terms of this Act."

The contract (which is in writing) whereby Miss Schoonover was employed as an actress by Universal Pictures Company, Inc., was executed December 8, 1938, it apparently being in consummation of an "option" agreement executed on November 5, 1938, when she was between ten and eleven years of age. The option agreement of November 5, 1938, as was the later contract of December 8, 1938, was signed by F. H. Schoonover and Eleanor Schoonover, father and mother of Gloria Jean, and by Gloria Jean herself. The latter's signature to the option agreement reads "Agreed to: Gloria Jean Schoonover (Gloria Jean) known as Gloria Jean." The option agreement of November 5, 1938, appears to have been executed in Scranton, Pennsylvania, where the family resided, and after its execution the mother and daughter went to California and the contract of December 8, 1938, was executed there. There was an extension of the "screen test" feature of the contract which need not be recited here, since it has no bearing on the decision of the case. It may be said that the contract (with certain exceptions apparently not requiring court approval) was approved by the Superior Court of the State of California, under the laws of that state.

The mother testified that the daughter was "known theatrically as Gloria Jean at the time of the signing of this November 8th, 1938" option, and elsewhere she stated, in substance, that the daughter had been appearing publicly in theatrical work "Since she is [sic] three and a half years old." It was not testified, however, that such early theatrical work was of a professional character.

It is clear from the record that the name "Gloria Jean" by which she had been christened was adopted as her stage or screen name, the surname, Schoonover, being dropped or discarded so far as professional use was concerned at the time the option agreement was executed, or very shortly thereafter. It also appears that she was publicized by that name as a prospective juvenile performer in different publications available to her employer for publicity purposes in the moving picture profession prior to any claimed use of the notation by appellant as a trade-mark and several months before the filing of appellant's application for registration, which was after she had appeared as a participant in making a picture and very shortly after the picture had been shown in the city of Chicago, Illinois, the situs of appellant's place of business.

It is not deemed material to set forth in detail the terms of the contract of employment between appellee and Universal Pictures Company, Inc., but, in view of certain contentions made before us on behalf of appellant, it is proper to recite that in paragraph 4 of the contract it is provided:

"(1) The artist * * * gives and grants to the producer solely and exclusively * * * the *perpetual* right to use the name of the artist and pictures or other reproductions of the artist's physical likeness * * * in connection with the advertising and exploitation thereof, as well as in connection with the advertising and/or exploitation of any other services which may be required of the artist hereunder * * *." (Italics ours.)

"(2) The artist does also hereby grant to the producer, *during the term hereof,* the sole and exclusive right to make use of, and to allow others to make use of his [her] name for advertising, commercial and/or publicity purposes (other than in connection with the acts, poses, plays and appearances of the artist hereunder), as well as the sole and exclusive right to make use of and distribute, and to allow others to make use of and distribute his [her] pictures, photographs or other re-

productions of his [her] physical likeness and of his [her] voice for like purposes. The artist shall at no time during said term grant the right to, authorize or willingly permit any person, firm or corporation other than the producer to make use of his [her] name or to make use of or distribute his [her] pictures, photographs or other reproductions of his [her] physical likeness of his [her] voice, and authorizes the producer, in the name of the artist or otherwise, to institute any proper legal proceedings to prevent such acts, or any of them." (Italics ours.)

It appears that under the authority of the last quoted paragraph Universal Pictures Company, Inc., from time to time licensed various business concerns (fifteen in all) "to use the likeness of Gloria Jean Schoonover and the name Gloria Jean" in connection with the advertising and exploitation of a great variety of articles of manufacture, the licensees paying what are designated in the contract as "royalties" for such licenses, and it was testified by one of the witnesses connected with the company that a portion of such royalties were paid to the artist although it was and is conceded that the contract does not obligate such payments.

It may be stated at this point that the petition for cancellation were filed in the Patent Office jointly by Universal Pictures Company, Inc., and the appellee here, but the Examiner of Trade-Mark Interferences held that the former could not qualify "under the name clause" and, in effect, eliminated it from the case. The company did not appeal from that decision. So, the question of the rights of the company was not before the commissioner and, of course, is not before us for adjudication.

Throughout its brief appellant refers to "Gloria Jean" (putting the name between quotation marks) as "the fictitious, assumed, professional or stage name" of appellee, and makes the contention that she cannot qualify under the name clause of section 5, because of the conveyance of the right to use of the name to her employer. The brief goes so far as to assert that "she had by written contract conveyed and granted 'perpetually' to her employer * * * 'solely and exclusively' all rights of use and ownership she may have had in that 'fictitious, assumed, professional or stage name' 'Gloria Jean'." This contention is based upon the appearance of the word "perpetual" in the first part of paragraph 4 above quoted from the contract, and the fact that in the second quoted part (granting the employer the right to make use of and authorize others to make use of her name for advertising merchandise) the use is limited to the duration (the language is "during the term hereof") of the contract was overlooked or disregarded. The distinction and the purpose of it are obvious.

Appellant also contends that appellee has not alleged or shown any facts from which it could be determined that she was damaged by appellant's registration.

▪ Assuming, without deciding, that if appellee had perpetually granted to the Universal Pictures Company the sole and exclusive right to use her professional name, "Gloria Jean," she could not be damaged by appellant's registration, the facts in this case conclusively show that such right was not granted. The right to use her name was granted only for the term of her contract, and upon its expiration the name could be used only by the company in connection with services performed by appellee while the contract was in existence. It follows that when appellee's petition for cancellation was filed she had the legal right to make contracts with others for the use of her name, "Gloria Jean," after the termination of her contract with the Universal Pictures Company. This was a valuable right, and she would be damaged in its exercise by the existence of appellant's registration.

■ Appellant argues before us, in effect, that the appellee has no right to maintain an action for cancellation, and that only Universal Pictures Company, Inc., has that right. The position so taken, in our opinion, is untenable. As has been stated, the right of the latter to maintain such action is not before us, but we think there is no question of the right of appellee herself to maintain it. The fact that her surname, Schoonover, is not involved does not affect her right. Gloria Jean is as much a part of her name as is Schoonover. It was, of course, made distinctive as a widely publicized stage name but it remained an actual Christian name while it became also a stage or screen name.

The gist of the commissioner's decision is embraced in the following:

"It seems to me that prior to September 28, 1939 the name 'Gloria Jean' had

been so well established as the screen name of petitioner that by that time petitioner had two names; one, her true or private name, Gloria Jean Schoonover, and the other her professional or screen name, Gloria Jean, and that each one was then the name of petitioner as an individual, and the mark 'Gloria Jean Juniors' of appellant's registration consists merely of the name of 'an individual'. I consider the disclaimed word 'Juniors' of the mark of the registration to be immaterial, and it is apparent that the name is not distinctively displayed in the registration."

We fail to find error in the holding so made.

The decision of the commissioner is affirmed.

Affirmed.